UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY DICKENS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:10-CV-666 (CEJ) |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

This matter is before the Court on the petition of Timothy Dickens for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Respondent has filed a response in opposition, and the issues are fully briefed.

I.  **Procedural Background**

Petitioner Timothy Dickens is currently incarcerated in Northeast Correctional Center in Bowling Green, Missouri, pursuant to the sentence of the Circuit Court of the City of St. Louis. On January 22, 2004, a jury convicted petitioner of one count of sexual assault, two counts of forcible sodomy, and one count of forcible rape. On April 15, 2004, petitioner was sentenced to seven years of imprisonment for sexual assault and eleven years for each of the forcible sodomy and rape convictions. The eleven-year sentences were to be served concurrently with one another, but consecutively to the seven-year sentence.

On June 21, 2005, the Missouri Court of Appeals affirmed the judgment of the trial court. Resp. Ex. E; State v. Dickens, 167 S.W.3d 734 (Mo. Ct. App. 2005). Petitioner then filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15. After an evidentiary hearing, the state circuit court denied petitioner's

motion. Resp. Ex. H. On November 24, 2009, the Missouri Court of Appeals affirmed. Resp. Ex. K.

In the instant § 2254 petition, petitioner asserts three grounds for relief: (1) that the state's evidence was insufficient to support his convictions; (2) that the trial court erred in failing "to make a sufficient inquiry after learning that a juror overheard a conversation regarding petitioner's bad temper and past 'problems;'" (3) that trial counsel was ineffective for failing to impeach a witness with a prior inconsistent statement.

II. **Factual Background**

Nicole Walker and petitioner met in September of 2002 and developed a sexual relationship. On the evening of October 24, 2002, petitioner was at Walker's home when Walker received a telephone call from her friend Ralph St. Louis. Walker answered the call and petitioner picked up another phone in the apartment to listen to the conversation. Petitioner asked who was calling, ordered Walker to hang up, and took the phone away from her. He accused her of "messing around" with other men. While petitioner and Walker argued, Walker's friend Pat telephoned. Petitioner answered the phone and yelled at Pat. Concerned for her friend, Pat drove to Walker's apartment and argued with petitioner. Pat and petitioner left Walker's apartment around 10:30 p.m.

After petitioner left, Walker remained agitated. She called petitioner several times, and left voice messages asking him not to harm her or her children. At 3:00 a.m., Walker fell asleep. She woke at 6:00 a.m. to petitioner's voice. He was outside her apartment, demanding that she unlock the door and let him in. When she refused, petitioner pounded violently on the door. Afraid that he would break down the door, Walker opened it. Petitioner entered and searched Walker's apartment with a

flashlight saying, "Where is he, I know he's in here." Walker asked him to leave. Instead, he led Walker to the bedroom and started to remove her clothes. He presented his penis and demanded oral sex, but Walker refused. He pulled her head towards his erect penis, and Walker turned her head away. Petitioner placed his penis on her face and began to growl with anger. Walker then performed oral sex on petitioner.

Next, petitioner ordered Walker to bend over on the bed. He inserted his penis into her vagina and his fingers into her rectum. She told him to stop, but he told her to "shut up." After he finished, petitioner called Walker a "stupid bitch," told her that she belonged to him, and threatened to blow up her apartment. Petitioner would not allow Walker to get dressed, and had intercourse with her a second time. Then, he left her apartment. Walker called the police and Ralph St. Louis, and stated that she had been raped.

Police officers arrived at Walker's apartment and found her shaking and crying. They took her statement, seized her bedspread, and brought her to the hospital where a doctor conducted an examination and collected specimens for a rape kit. The examination revealed a contusion on her thigh but no vaginal injury.

### III. Legal Standard

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir.2004). "[T]he prisoner has the burden of rebutting the presumption of correctness by clear and convincing evidence." Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

### III. Discussion

### A. Ground One

Petitioner argues that there was insufficient evidence to support convictions of forcible sodomy, forcible rape, and sexual assault. Specifically, petitioner contends that the prosecution failed to prove forcible compulsion, an element of sodomy and rape, and lack of consent, which is an element of sexual assault.

"Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Garrison v. Burt, 637 F.3d 849, 854 (8th Cir. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Under 28 U.S.C. § 2254(d)(1), a federal court may grant relief only if the state court's application of the Jackson sufficiency-of-evidence standard was "both incorrect and unreasonable." Id. at 855 (quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010)); see also Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir.2007) (recognizing the scope of review of the state court's determination of whether evidence was sufficient is "extremely limited"). In this case, the Missouri Court of Appeals did not unreasonably apply the Jackson standard.

The Missouri Court of Appeals found that sufficient evidence supported convictions of forcible sodomy and forcible rape. The prosecution was required to prove that the sexual acts occurred through the use of forcible compulsion. Mo. Rev. Stat. § 566.060(1) (defining forcible sodomy as "deviate sexual intercourse with another person by the use of forcible compulsion."); Mo. Rev. Stat. § 566.030(1) (defining forcible rape as "sexual intercourse with another person by the use of forcible compulsion."). As the state court explained, forcible compulsion is defined as either (a) physical force sufficient to overcome reasonable resistance or (b) an express or

implied threat that places the victim in fear of death, physical injury, or kidnapping of herself or another person. Mo. Rev. Stat. § 556.061(12). To determine whether force is sufficient to overcome reasonable resistance, Missouri courts consider the totality of the circumstances. State v. Niederstadt, 66 S.W.3d 12, 15 (Mo. 2002). Factors to be considered include: whether violence or threats precede the sexual act; the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress. Id.

The Missouri Court of Appeals found sufficient evidence of verbal threats placing Walker in fear of physical injury. Walker testified that petitioner made threats "about things that could happen to me or my kids." Walker left voice messages on petitioner's phone begging him not to hurt anyone. She unlocked her apartment on the morning of the attack because she was afraid that petitioner would break down the door. The court also found evidence sufficient to show use of physical force to overcome resistance: petitioner led Walker to the bedroom, demanded oral sex, grabbed the back of her head and pulled it towards his penis, laid his penis on her face when she turned her head, and "growled" until she performed oral sex. He insisted on having intercourse and inserted fingers into her rectum although she asked him to stop. He told her to "shut up" when she protested. Afterwards, he called her names such as "bitch," stupid," and "ignorant," threatened to blow up her apartment, refused to let her get dressed, and had sex with her again. The state court reasonably concluded that there was sufficient evidence of forcible compulsion.

The state court also found sufficient evidence to support the conviction for sexual assault, which is defined as having "sexual intercourse with another person knowing that he does so without that person's consent." Mo. Rev. Stat. 566.040(1).

Lack of consent may be established by showing actual force or submission because of fear induced by violence or threat of violence. State v. Davenport, 839 S.W. 2d 723, 726 (Mo. Ct. App. 1992). Petitioner pounded on the door in the early morning hours to gain admission to Walker's apartment, searched the apartment in a jealous rage for another man, threatened Walker and her children with physical harm, and orally sodomized her. As the state court noted, even if Walker did not physically resist the sexual intercourse that followed, she submitted because of fear induced by petitioner's threats and violent behavior. The state court reasonably concluded that this evidence sufficiently shows absence of consent.

The state court reasonably rejected petitioner's challenge to the sufficiency of the evidence. Accordingly, relief on this ground will be denied.

B. Ground Two

Petitioner next argues that the trial court did not make a full inquiry into his allegation that a juror overheard a prejudicial conversation in a courtroom hallway. Petitioner argues that the trial court should have examined the entire jury panel to see if the jury had been contaminated by this conversation.

At the sentencing hearing, the trial court heard testimony from three individuals: petitioner's nephew, Wayne Brown; petitioner's mother, Linda Dickens; and the juror in question, Charles Moose. Brown testified that petitioner's family was sitting in the hallway of the courthouse, laughing and joking about a prior altercation petitioner had had with another woman, when he saw Moose walking down the hall. Linda Dickens stated that she also saw Moose. However, Moose testified that he did not overhear any conversation about petitioner, and that he only considered the evidence presented in court to reach a verdict. The court found this testimony credible, and concluded that Moose did not overhear the conversation and there was no basis to disturb the

jury verdict. The Missouri Court of Appeals held the trial court did not err in refusing to question the entire jury panel, because Moose did not overhear the conversation.

The Sixth and Fourteenth Amendments guarantee the right to an impartial jury. Ross v. Oklahoma, 487 U.S. 81, 85 (1988). The trial court found no credible evidence that Moose overheard anything to jeopardize his impartiality. The court found Moose's testimony credible, and this Court is not in a position to reevaluate credibility. Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004) ("Federal habeas review gives federal courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Because the trial court determined that Moose did not overhear the conversation, there could be no risk that the statements were communicated by Moose to other jurors. Accordingly, petitioner is not entitled to relief on this ground.

C. Ground Three

For his final ground, petitioner states that trial counsel was ineffective for failing to impeach witness Ralph St. Louis with a prior inconsistent statement from his deposition. In actuality, petitioner objects to counsel's failure to draw attention to a discrepancy between the deposition testimony of Ralph St. Louis and the trial testimony of Walker. In his deposition, St. Louis stated that Walker called him at 10:30 p.m. and reported that petitioner was pounding on her door. Resp. Ex. J. At trial, Walker testified that petitioner left her apartment at 10:30 p.m., and that she awoke at 6:00 a.m. to petitioner knocking on her door. Petitioner argues that, had the jury been made aware of St. Louis' deposition testimony, Walker's description of the events would have been called into question.

In order to state a claim of ineffective assistance of trial counsel, petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced

by that performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. Strickland, 466 U.S. at 687. To establish prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Federal habeas review of a Strickland claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable - a substantially higher threshold. And because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

The state motion court determined that petitioner could not establish prejudice, and the Missouri Court of Appeals affirmed. Resp. Ex. K. The testimony of Walker and St. Louis is consistent in other respects. Both testified that St. Louis and Walker spoke on the phone on the evening of October 24, 2002, and that petitioner picked up the phone and demanded to know who was calling. Both testified that they spoke on the morning of October 25, and that Walker told St. Louis she had been raped. Considering the prosecution's evidence of petitioner's jealousy and hostility, his inconsistent statements to police, and Walker's demeanor following the assault, the state court found no reasonable probability of a different result had St. Louis been "impeached" with his deposition testimony regarding the 10:30 p.m. phone call. The state court's determination under the Strickland standard was reasonable, and petitioner is not entitled to relief.

## IV. Conclusion

For the reasons discussed above, the Court finds that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). Because petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of June, 2013.